IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00303-RBJ

EAGLE SYSTEMS & SERVICES, INC.,

     Plaintiff,

v.

EXELIS SYSTEMS CORPORATION,

     Defendant.

---

## ORDER ON PENDING MOTIONS

---

The Court here addresses defendant's motions (1) for partial summary judgment, ECF No. 84; (2) to strike certain exhibits submitted with plaintiff's response to the motion, ECF No. 92; and (3) to strike plaintiff's designation and the opinions of purported expert Donald Foley, ECF No. 93. The motion for partial summary judgment is granted. The motion to strike exhibits is moot. The motion to strike the expert is granted.

## BACKGROUND

On March 24, 2008 the United States Army awarded a contract to Exelis Systems Corporation, formerly ITT Systems Corporation, to provide certain services at the Army's facility at Ft. Benning, Georgia. On May 23, 2008 Exelis entered into a subcontract with Eagle Systems & Services, Inc. to provide logistics services at Ft. Benning. The parties then entered into a series of "task orders," the last being a May 11, 2011 task order, pursuant to which Eagle operated between September 2008 and March 2012.

The subcontract and the task orders incorporated certain ITT Corporation, Systems Division "General Terms & Conditions of Purchase." ECF No. 84-1 at 13. Paragraph 34 of the

1

General Terms and Conditions, headed "Termination for Convenience," provided in pertinent part that "Buyer [Exelis] shall have the right to terminate this Order in whole or in part at any time, and from time to time, by written notice effective upon receipt by Seller [Eagle], even though Seller [Eagle] is not in breach of any obligation hereunder." *Id.* at 14.  Paragraph 2 of the General Terms and Conditions provides that disputes must be brought in a court of competent jurisdiction in Colorado and will be governed by Colorado law.  *Id.* at 13.

According to Eagle's Second Amended Complaint, in September 2011 the Army notified Exelis that it was facing a funding shortfall for government fiscal year 2012, and it directed Exelis develop substantial savings.  ECF No. 75 at ¶18.  Exelis in turn requested that Eagle submit a cost reduction proposal that would essentially reduce Eagle's costs by 10% effective December 1, 2011.  *Id.* at ¶¶19-21.  Eagle ultimately submitted four cost reduction proposals, none of which Exelis accepted.  *Id.* at ¶¶22-35.  On January 6, 2012 Exelis gave written notice to Eagle that it would terminate the last task order (and thereby the subcontract) effective March 11, 2012 pursuant to the Termination for Convenience clause in the General Terms and Conditions. *Id.* at ¶39.

Exelis notified the union, in which many of its and Eagle's employees were members, that it was terminating the Eagle subcontract.  It informed the union that, pursuant to a non-solicitation clause in its agreement with Eagle, it would not be soliciting Eagle's employees. Rather, it would be posting positions, but would not grant Eagle employees preference.  Eagle believed that this information was provided to the union with "a wink and a nod," and notwithstanding that the union filed a grievance against Exelis under the collective bargaining agreement, that it was in fact soliciting Eagle's employees.

In its original Complaint, filed in this Court on February 6, 2012 pursuant to diversity of citizenship jurisdiction, Eagle brought three claims for relief.  In Count One Eagle sought equitable relief voiding the termination on grounds that Exelis' exercise of the Termination for Convenience clause violated the implied covenant of good faith and fair dealing.[1]  Alternatively, Eagle sought an award of money damages (Count Two) and an injunction prohibiting Exelis from hiring Eagle employees who were members of the union (Count Three).  ECF No. 1.

Eagle also moved for a preliminary injunction prohibiting the termination of the agreement and the solicitation of its employees until the case could be fully litigated on its merits.  ECF No. 5.  The Court held an evidentiary hearing on the motion on February 9, 2012.  Eagle concluded its evidentiary presentation.  ECF No. 38, Tr. at 116.  Exelis did not, but after conferring with counsel, the Court delivered its findings of fact, conclusions of law, and order denying the motion for a preliminary injunction from the bench.  *Id.* at 129–36.  Eagle's interlocutory appeal from the denial of the motion was unsuccessful.  ECF No. 44.  The Court later granted Exelis' unopposed motion for a temporary stay, so that the parties could "consider their respective positions," but any agreed resolution of the remainder of the parties' dispute proved elusive.

In Eagle's Second Amended Complaint, filed February 18, 2014, it asserts three claims for relief. In Count One, Eagle alleges that under the subcontract and related task orders, Exelis was obligated to reimburse Eagle for the difference between billing rates and actual rates for the

---

[1] To be precise, Count One sought (A) a declaration that exercise of the termination clause was a material breach of the implied covenant of good faith and fair dealing; (B) and that communications with the union constituted improper solicitation of Eagle's employees; (C) an order of specific performance requiring Exelis to void the termination and to exercise an option to continue the relationship with Eagle in effect for an additional year; and (D) enjoining Exelis from hiring Eagle's employees who were members of the union.  ECF No. 1 at 11.

work it performed.  Eagle claims that Exelis is in breach of its contractual obligation to make this "billed to actual rate adjustment" and seeks damages of $1,804,499 plus interest and costs.  ECF No. 75 at 11–13.  In Count Two Eagle alleges that Exelis' termination of the subcontract and related task orders breached the implied covenant of good faith and fair dealing, resulting in damages totaling $1,593,334 plus "other consequential and incidental damages."  *Id.* at 12–13.  Finally, in Count Three, as an alternative to Count Two in the event the Court determines that Exelis properly terminated the agreements, Eagle seeks an award of either $210,938 in termination costs plus interest and costs.  *Id.* at 13–14.

## CONCLUSIONS

### I.  <u>Motion for Partial Summary Judgment [ECF No. 84]</u>.

Exelis seeks partial summary judgment dismissing only Count Two of the Second Amended Complaint.  Count Two asserts breach of the implied covenant of good faith and fair dealing.  For the following reasons I agree that this Count must be dismissed.

Every contract in Colorado contains an implied duty of good faith and fair dealing.  *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995).  The duty applies "when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time."  *Id.*  The party with discretionary authority must exercise its discretion in good faith so as not to defeat the reasonable expectations of the other party.  However, the implied covenant "will not contradict terms or conditions for which a party has bargained."  *Id.*

Here, two large, sophisticated, corporate parties entered into a contract with a Termination for Convenience clause.  This clause expressly provided that Exelis "shall have the right to terminate this Order in whole or in part at any time, and from time to time, by written notice effective upon receipt by [Eagle], even though [Eagle] is not in breach of any obligation

hereunder." Eagle's argument is that, because of the implied covenant, Exelis could not exercise this right if doing so would defeat Eagle's reasonable expectations under the contract. The problem is that this would contradict the express term of the contract for which the parties bargained—precisely what *Amoco* held an implied covenant could not do.

Colorado state and federal courts have held that the implied covenant is inapplicable to a clause expressly permitting one party to terminate the contract without cause. *See, e.g.*, *Grossman v. Columbine Medical Group, Inc.*, 12 P.3d 269, 271 (Colo. App. 1999) (implied covenant inapplicable to a clause granting both parties the right to terminate the contract for any reason); *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.), Inc.*, 970 F. Supp. 2d 1162, 1185 (D. Colo. 2013) (implied covenant inapplicable to agreement that Suncor could revoke terminal access at any time without cause); *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-1212-WYD-BNB, 2007 WL 4268962, at *6 (D. Colo. Nov. 30, 2007) ("the implied covenant of good faith and fair dealing may not be used to invalidate contractual terms that parties negotiated and agreed on, including a right to terminate the contract"). *See also Soderlun v. Public Service Co. of Colorado*, 944 P.2d 616, 623 (Colo. App. 1997) (implied covenant cannot limit an employer's right to discharge an at-will employee without cause).

None of the authorities cited in Eagle's response hold that the implied covenant of good faith and fair dealing may be applied to an express provision permitting a party to terminate the contract without cause. Nor do any of these cases persuade me that the reasoning of the cases cited above is unpersuasive and should not be followed. I also note that while Eagle cites *ADT Security Services, Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) for the reasonable proposition that "[a] party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party

given discretion would exercise its discretion to determine open terms under a contract"—a proposition that Eagle has not advanced in this case—the same case reiterates that "the duty of good faith cannot be used to contradict terms or conditions for which a party has bargained." *Id.*

During the preliminary injunction hearing Eagle's counsel cited *Vibra-Tech Engineers, Inc. v. United States*,  567 F. Supp. 483, 486 (D. Colo. 1983) for its holding that a government's decision to terminate a contract cannot be arbitrary and capricious notwithstanding a standard termination for convenience clause.  Eagle does not cite this case in its response to the present motion.  Perhaps this is because the case has been criticized, *see, e.g.*, *Ingersoll-Rand v. United States*, 780 F.2d 74, 79 n.9 (D.C. Cir. 1985); or because *Vibra-Tech* was not decided under Colorado law but instead under federal authorities that pre-dated *Amoco* and its progeny; or because this Court found, during the preliminary injunction hearing, that Eagle's evidence was not sufficiently suggestive that the termination was arbitrary and capricious to make it likely that Eagle could ultimately prevail on the merits on that basis.  ECF No. 38, Tr. at 130–31. Regardless, I do not find *Vibra-Tech* convincing here.

Rather, the Court concludes that, under Colorado law, the implied covenant of good faith and fair dealing does not limit a party's express contractual right to terminate a contract without cause, particularly where the termination for convenience clause was agreed between sophisticated corporate government contractors.  Therefore, the motion for partial summary judgment dismissing Eagle's second count is granted.

## II.  Motion to Strike Exhibits [ECF No. 92].

Exelis asks the Court to strike all exhibits to Eagle's response to the motion for partial summary judgment, whether specifically submitted with the response or incorporated from earlier filings by reference.  These exhibits allegedly are either irrelevant, contain improper

opinions, or both.  Because the Court has granted Exelis' motion for partial summary judgment, this motion is moot.

### III.  Motion to Strike Expert [ECF No. 93].

This motion asks the Court to strike the designation and the opinions of Donald Foley, an engineer retained as an expert witness.  Mr. Foley's opinions are summarized in an affidavit attached as Exhibit 1 to Eagle's response to Exelis' motion for partial summary judgment.  The gist of the affidavit is that Exelis' termination of the subcontract was not consistent with the implied covenant of good faith and fair dealing or with reasonable commercial standards.  Exelis challenges the relevance and reliability of the opinions under Fed. R. Civ. P. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and related cases.

Because the count to which Mr. Foley's opinions apply has been dismissed, and it does not appear that Eagle has disclosed any opinions by Mr. Foley that are relevant to the remaining counts, the motion is granted.  There is no need for a "Daubert hearing" in the circumstances.

**ORDER**

Motion #84 is GRANTED.  Motion #92 is MOOT.  Motion #93 is GRANTED.

Dated this 2nd day of January, 2015.

BY THE COURT:

_____
T R. Brooke Jackson
United States District Judge